909 F.2d 1482
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ASSOCIATION OF P & C DOCK LONGSHOREMEN, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
and
Transtar, Inc., Intervenor-Respondent.
 No. 89-3930.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, the Association of P & C Dock Longshoremen (Association), petitions for review of the denial by the Interstate Commerce Commission (ICC or Commission) of its petition to reopen a decision exempting the acquisition of certain rail carriers from the provisions of the Interstate Commerce Act. The ICC denied the Association's petition on the grounds that the Association did not establish any reasons for which a final exemption decision may be reopened. We will dismiss the Association's petition for lack of subject matter jurisdiction.
 
 I.
 
 2
 The current petition for review arose out of a series of transactions in which Blackstone Capital Partners, L.P., and Blackstone Transportation Partners, L.P. (collectively known as Blackstone), sought to acquire control of the transportation-related subsidiaries of USX Corporation (USX). Transtar, Inc. (Transtar), is a Delaware corporation formed for the purpose of implementing the transactions, and it is owned 51 percent by Blackstone and 49 percent by USX.
 
 
 3
 Several of the entities involved in the transaction are rail carriers as that term is defined in the Interstate Commerce Act.[1] For Transtar, a non-carrier, to acquire control of two or more rail carriers, it was required to obtain the approval and authority of the ICC. 49 U.S.C. Sec. 11343(a)(4). In addition, rail carriers that are involved in such transactions must protect the interests of the railroad employees who are affected by the transactions. 49 U.S.C. Sec. 11347.
 
 
 4
 Under 49 U.S.C. Sec. 10505(a), the ICC is directed to exempt a transaction or class of transactions if it finds that regulation is not necessary to carry out the transportation policy of the Act, and if either the transaction is of limited scope or if regulation is not needed to protect shippers from the abuse of market power. However, exempted rail carriers are not relieved of any obligations to their employees. 49 U.S.C. Sec. 10505(g).
 
 
 5
 In November 1988, Transtar and USX jointly applied to the ICC for section 10505 exemption. Although the petition for exemption named several rail carriers and one water carrier, it did not include the Pittsburgh & Conneaut Dock Company (P & C Dock Company or P & C Dock), because Transtar and USX considered it to be a stevedore, not a rail carrier. On December 19, 1988, the ICC granted the exemption[2] in an unpublished decision. Blackstone Capital Partners L.P., Blackstone Transp. Partners L.P. and USX Corp.--Exemption from 49 U.S.C. 10746, 11321, and 11343, Finance Docket No. 31363. The decision required the parties to apply the employee protection provisions to the employees of the rail carriers, but not to those of the water carrier. See New York Dock Ry.--Control--Brooklyn Eastern Dist. Terminal, 360 I.C.C. 60 (1979), aff'd, New York Dock Ry. v. United States, 609 F.2d 83 (2d Cir.1979). The notice of exemption was published in the Federal Register on December 23, 1988, and it became final on December 28. 53 Fed.Reg. 51932 (1988).
 
 
 6
 On May 17, 1989, the Association of P & C Dock Longshoremen filed a "Petition to Reopen and To Amend Order" with the ICC.[3] In its petition, the Association requested the ICC to reopen the exemption decision and to amend it to include P & C Dock as a rail carrier, thereby extending the employee protection provisions to the longshoremen of P & C Dock. The Association explained that P & C Dock was one of the entities acquired by Transtar and claimed that it is a rail carrier within the meaning of the Interstate Commerce Act. P & C Dock operates a coal dock and rail facilities in conjunction with interstate rail-lake shipments of commodities. In support of its petition, the Association argued that P & C Dock is closely connected with the Bessemer and Lake Erie Railroad Company (B & LE), and that the two companies jointly operate a two-way commodity transport system. Both companies are owned by USX or its successors, and they have many of the same principal officers and common departments. More specifically, P & C Dock performs loading and unloading services in connection with interstate rail-lake shipments over the B & LE railroad line. According to the Association, these activities bring P & C Dock within the definition of rail carrier as set forth in 49 U.S.C. Sec. 10102.
 
 
 7
 In its petition, the Association cited Lake Coal Demurrage, 232 I.C.C. 735, 774-76 (1939), in which the ICC stated that the transfer facilities of P & C Dock were essential to the operations of B & LE. The Association also submitted a letter from the Railroad Retirement Board, dated July 3, 1941, in which the general counsel of the Board opined that P & C Dock is an employer under the Railroad Retirement Act because its operations are integral and essential to the interstate railroad transportation service undertaken by B & LE. Finally, the Association cited United Transp. Union v. Bessemer & Lake Erie R.R. Co. and Pittsburgh & Conneaut Dock Co., 342 I.C.C. 849 (1974), in which the ICC held that P & C Dock was a common carrier within the meaning of the Interstate Commerce Act.[4]
 
 
 8
 Transtar opposed the request to reopen, stating that the Association did not establish any of the grounds that would permit the reopening of the order under 49 C.F.R. Sec. 1115.4.[5] The Association sought leave to file a reply to Transtar's reply, which the ICC denied.
 
 
 9
 The ICC denied the Association's petition to reopen, stating that the petition did not meet the requirements of 49 C.F.R. Sec. 1115.4 and that the evidence presented was not "new." The ICC also engaged in a discussion of the merits of the Association's claim. The Association then filed a petition for review with this court.
 
 II.
 
 10
 Upon review of the ICC's denial of the Association's petition, we may examine only the lawfulness of the refusal to reopen the proceeding.[6] We may not review the original order itself. Interstate Commerce Comm'n v. Brotherhood of Locomotive Engineers, 482 U.S. 270 (1987). The Commission may reopen a proceeding upon a showing of "material error, new evidence, or substantially changed circumstances." 49 U.S.C. Sec. 10327(g). In Locomotive Engineers, the Supreme Court held that courts may review the refusal to reopen only "[i]f the petition that was denied sought reopening on the basis of new evidence or changed circumstances ... otherwise, the agency's refusal to go back over ploughed ground is nonreviewable." Id. at 284.[7] The denial of a petition to reopen that is based on a claim of material error therefore is not judicially reviewable. The Court explained its rationale for excluding such denials from judicial review:
 
 
 11
 There is good reason for distinguishing between the two. If review of denial to reopen for new evidence or changed circumstances is unavailable, the petitioner will have been deprived of all opportunity for judicial consideration--even on a "clearest abuse of discretion" basis--of facts which, through no fault of his own, the original proceeding did not contain. By contrast, where no new data but only "material error" has been put forward as the basis for reopening, an appeal places before the courts precisely the same substance that could have been brought there by appeal from the original order--but asks them to review it on the strange, one-step-removed basis of whether the agency decision is not only unlawful, but so unlawful that the refusal to reconsider it is an abuse of discretion. Such an appeal serves no purpose whatever where a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency (and within the period allotted for judicial review of the original order), since in that situation the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts directly after the petition for reconsideration is denied. And where the petition is filed outside that period (and outside the period for judicial review of the original order) judicial review would serve only the peculiar purpose of extending indefinitely the time within which seriously mistaken agency orders can be judicially overturned....
 
 
 12
 Id. at 279-80 (footnote omitted; emphasis in original).
 
 
 13
 With the above guidance of Locomotive Engineers in mind, we must determine whether we have jurisdiction to review the ICC's denial of the Association's petition. The Association did not indicate in its petition the grounds upon which it was seeking to have the exemption proceeding reopened. It merely stated that it wanted to have the matter reopened and that P & C Dock should be added to the list of exempted rail carriers so that its employees would receive the protections of New York Dock Ry. The petition did not offer new evidence; all of the evidence offered by the Association was available at the time of the original proceeding. Notwithstanding the fact that P & C Dock was not a subject of the exemption proceedings and that the evidence of its status as a rail carrier was not offered as evidence in the proceeding, such evidence was available at the time of the original proceeding and does not constitute new evidence for the purposes of the petition to reopen. As stated by the Ninth Circuit, "newly raised evidence is not the same as new evidence." Friends of Sierra R.R., Inc. v. Interstate Commerce Comm'n, 881 F.2d 663, 667 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1166 (1990).
 
 
 14
 Nor did the Association's petition allege changed circumstances. In fact, the premise upon which the petition was based is that P & C Dock has been a rail carrier throughout the entire history of its operation and that the company should have been included in the Commission's order.
 
 
 15
 A close look at the Association's petition reveals that it was in fact based upon material error. The thrust of the Association's argument is that the ICC erred by excluding P & C Dock from the list of rail carriers. Therefore, we have no jurisdiction to review the Commission's denial of the Association's petition, and we will dismiss the petition for review.
 
 
 16
 The rule of Locomotive Engineers applies to the Association despite the fact that the Association was not a party to the original proceeding. The argument can be made that to deny the Association review at this stage would be to deprive the Association of all opportunity for judicial review, because the Association could not have appealed from the original order. As stated by the Ninth Circuit in Friends of Sierra R.R., however, "[t]his argument is unavailing because as a matter of law [the Association] had adequate notice of the original proceeding before the ICC." Id. at 667. Employees of P & C Dock Company received letters from the president of P & C Dock Company and B & LE informing them of the exemption proceeding. The second of these letters was dated November 10, 1988, which was after the Association became certified as the collective bargaining representative of the P & C Dock Longshoremen. There is no reason why the Association could not have intervened in the exemption proceeding to protect the interests of its employee members. Furthermore, the decision granting the exemption was published in the Federal Register five days before it became final. Publication in the Federal Register serves as adequate notice to all persons subject to or affected by the decision. 44 U.S.C. Sec. 1507; Friends of Sierra R.R., 881 F.2d at 668.
 
 
 17
 Attempting to avoid the rule of Locomotive Engineers, the Association argues in the alternative that its "Petition to Reopen and to Amend Order" was not governed by 49 C.F.R. Sec. 1115.4 but instead by 49 C.F.R. Sec. 1117.1, which reads:
 
 
 18
 Sec. 1117.1 Petitions.
 
 
 19
 A party seeking relief not provided for in any other rule may file a petition for such relief. The petition should contain (a) a short, plain statement of the grounds upon which the Commission's jurisdiction is based; (b) a short plain statement of the claim showing that the petitioner is entitled to relief; and (c) a demand for the relief the petitioner believes is appropriate.
 
 
 20
 The Association claims that it was seeking to have the order "amended" and "revoked" rather than "reopened," and that the petition complied fully with the above regulation. This argument fails because the Association was not a party to the exemption proceeding. The definitional section of the governing regulations defines a party as "a complainant, defendant, applicant, respondent, protestant, intervenor, or petitioner in any proceeding." 49 C.F.R. Sec. 1101.2. The Association did not participate in any manner in the original proceeding, despite having adequate notice and the opportunity to do so. Because section 1117.1 provides a remedy for parties only, the Association cannot claim to have been seeking relief under this regulation.
 
 
 21
 Although we must dismiss the petition for review, the Association is not left without a remedy. For example, the Association may file a complaint with the Commission under 49 U.S.C. Sec. 11701, alleging that Transtar violated the Interstate Commerce Act by acquiring control of P & C Dock without first obtaining ICC approval or an exemption from the requirement of approval. Alternatively, the Association could seek to have the Commission issue a declaratory order pursuant to 5 U.S.C. Sec. 554(e) to have P & C Dock declared to be a rail carrier.
 
 
 22
 Because we lack jurisdiction to review the denial of the Association's petition to reopen, the Association's petition for review is DISMISSED.
 
 
 
 [1]
 A rail carrier is defined in 49 U.S.C. Sec. 10102 as follows:
 (20) "rail carrier" means a person providing railroad transportation for compensation.
 (21) "railroad" includes--
 (A) a bridge, car float, lighter, and ferry used by or in connection with a railroad;
 (B) the road used by a rail carrier and owned by it or operated under an agreement; and
 (C) a switch, spur, track, terminal, terminal facility, and a freight depot, yard, and ground, used or necessary for transportation.
 * * *
 (26) "transportation" includes--
 (A) a locomotive, car, vehicle, motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
 (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property.
 
 
 [2]
 The following entities were included in the exemption: Bessemer and Lake Erie Railroad Company; Birmingham Southern Railroad Company; the Lake Terminal Railroad Company; McKeesport Connecting Railroad Company; Union Railroad Company; Warrior & Gulf Navigation Company; Duluth, Missabe and Iron Range Railway Company; and Elgin, Joliet, and Eastern Railway Company
 
 
 [3]
 Transtar argues in its brief that the Association's petition for review must be dismissed as untimely. Judicial review of final orders of the ICC is governed by the Hobbs Act, 28 U.S.C. Sec. 2341 et seq., which provides that any party aggrieved by a "final order" of the ICC "may, within 60 days after its entry, file a petition to review the order in the court of appeals wherein venue lies." 28 U.S.C. Sec. 2344. Because the instant petition was filed more than 60 days after the order of exemption, Transtar argues it is untimely. Had the Association filed its petition for reopening with the ICC within 20 days after service of the order, it would have tolled the 60-day period for judicial review. Then, argues Transtar, the Association would have been required to file its petition for judicial review within the requisite time after the denial by the ICC of the petition to reopen. Transtar misapprehends the nature of a petition to reopen under 49 C.F.R. Sec. 1115.4. The 20-day time limit to which Transtar refers is set forth in 49 C.F.R. Sec. 1115.3(e) and governs appeals from agency decisions. The Association was not appealing directly from the order, but rather seeking, as a non-party, to have it reopened. Petitions under section 1115.4 may be filed "at any time." The Commission did not deny the Association's petition until September 19, 1989. The Association filed its petition for review with this court on October 12, 1989, well within the 60-day time limit prescribed by the Hobbs Act
 
 
 [4]
 This report and order was vacated and set aside by the ICC on February 13, 1975. United Transp. Union v. Bessemer & Lake Erie R.R. Co. and Pittsburgh & Conneaut Dock Co., Finance Docket No. 26914 (1975)
 
 
 [5]
 49 C.F.R. Sec. 1115.4 reads:
 A person at any time may file a petition to reopen any administratively final action of the Commission pursuant to the requirements of Sec. 1115.3(c) and (d) of this part. A petition to reopen an operating rights application proceeding must state in detail information sufficient to establish either fraud or ministerial mistake in the earlier decision. A petition to reopen all other proceedings must state in detail the respects in which the proceeding involves material error, new evidence, or substantially changed circumstances and must include a request that the Commission make such a determination.
 
 
 [6]
 The Association argues in its brief that the ICC failed to comply with its statutory obligations by failing to hold a hearing to determine whether P & C Dock Company is a rail carrier. Nothing in either the statute or the regulations indicates that the ICC is required to conduct a formal hearing on petitions to reopen final decisions, nor do any of the cases cited by the Association stand for the proposition that such a hearing is required
 
 
 [7]
 The standard of review from a denial of a petition to reopen an ICC proceeding is abuse of discretion. Locomotive Engineers, 482 U.S. at 284